**In re John H. HIX, Jr. and Miriam L. Hix, Debtors.**

**Brian HIGHLAND, Plaintiff,**

v.

**John H. HIX, Jr. and Miriam L. Hix, Defendants.**

**Bankruptcy No. 92–3379.**
**Related Case No. 92 31584.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Oct. 28, 1993.

Richard J. Szczepaniak, Toledo, OH, for plaintiff.

Keith A. Kochheiser, Marion, OH, for defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon Plaintiff's Complaint to Determine Dischargeability and/or Objection to Discharge Pursuant to 11 U.S.C. Section 523 and 11 U.S.C. Section 727; and the Answer of Defendant, John Hix, Jr., (hereafter "Defendant"). Miriam Hix, was subsequently dismissed as a party Defendant. At the Trial, the parties were afforded the opportunity to present testimony, evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the entire record in this case. Based upon that review, and for the following reasons, this Court finds that pursuant to the provisions of 11 U.S.C. § 727, Defendant is entitled to a discharge of all dischargeable debts. However, under 11 U.S.C. § 523(a)(4), any amount determined by the Marion County Probate Court to be a debt owed to Plaintiff and/or reimbursable to the Highland estates is not Dischargeable.

### FACTS

The following facts were adduced at Trial. Naomi and Wilbur Highland are Plaintiff's parents. Defendant was initially hired by Wilbur Highland as legal counsel for the administration of Naomi Highland's estate. Under Naomi Highland's will, Wilbur Highland was appointed fiduciary. When Wilbur Highland died, Defendant became counsel for both estates. Wilbur Highland died intestate and Plaintiff was appointed administrator.

Defendant typically charges fees which approximate 6% of the total estate; however, Defendant's agreement with Wilbur Highland included payment of fees totaling approximately 4% to 5% of Naomi Highland's Eighty Eight Thousand Five Hundred Fifty-five and 95/100 Dollars ($88,550.95) estate. To open Naomi Highland's estate, Defendant obtained a partial payment of Eight Thousand Four Hundred Eighty Two and 68/100 Dollars ($8,482.68).

Plaintiff and Defendant agreed that attorney fees in the administration of Wilbur Highland's estate would not exceed six percent (6%) of the estate's Two Hundred Ninety-one Thousand Seven Hundred Sixty-one and 58/100 Dollars ($291,761.58) value. Throughout its administration, Defendant withdrew Forty Two Thousand and 00/100 Dollars ($42,000.00) or 14.3% from the estate in fees as follows:

| | |
|---|---|
| $ 4,000.00 | November 9, 1990 |
| $ 4,000.00 | December 13, 1990 |
| $ 2,000.00 | December 24, 1990 |
| $ 6,000.00 | January 2, 1991 |
| $ 1,000.00 | January 24, 1991 |
| $25,000.00 | April 15, 1991. |

The withdrawal of Twenty Five Thousand and 00/100 Dollars ($25,000.00) on April 15, 1991 coincides with the due date of Defendant's 1990 federal and state taxes. Defendant's 1990 federal tax liability totalled Nineteen Thousand Two Hundred Twelve and 98/100 Dollars ($19,212.98), exclusive of a penalty of Six Hundred Thirty Nine and 14/100 Dollars ($639.14); and state taxes. Defendant's January, 1991 withdrawals totalling Seven Thousand and 00/100 Dollars ($7,000.00) coincide with the termination of his employment as law director for the City of Marion, Ohio.

Defendant unilaterally decided to place approximately One Hundred Eighty Thousand and 00/100 Dollars ($180,000.00) of estate assets in a noninterest bearing account. At the urging of Defendant's secretary, Gwen McKinnis, Plaintiff endorsed several blank checks which remained in Defendant's possession. Ms. McKinnis apprised Defendant of the blank checks. Plaintiff never received itemized statements, bills, invoices or receipts from Defendant for services rendered in conjunction with any of the fees withdrawn. Upon review of Defendant's fees, Plaintiff fired Defendant. Succeeding counsel subsequently filed an objection to the amount and reasonableness of Defendant's fees in the Marion County Probate Court.

Defendant filed his Petition pursuant to Chapter 7 of the Bankruptcy Code on May 1, 1992. The first date set for the Meeting of Creditors under Section 341 was June 9,

1992. With leave of Court, Plaintiff filed a Complaint to Determine Dischargeability and Objection to Discharge alleging that Defendant's fees for representation of the estate are unreasonable; and payment of said fees arose from acts of fraud and defalcation committed while in Defendant's fiduciary capacity. According to Plaintiff, any amount of Defendant's fees determined by the state court to be unreasonable is nondischargeable under 11 U.S.C. § 523(a)(2) and (a)(4). Defendant filed an Answer denying any impropriety in his representation of the Highland estates and alleging that his fees were reasonable considering the size of the estates; and amount of work involved in their administration.

### LAW

Relevant portions of the Bankruptcy Code read as follows:

**§ 523. Exceptions to Discharge.**

(a) A discharge under sections 727, 1141, 1128(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

### DISCUSSION

■ Since the objection to the amount and reasonableness of Defendant's fees remains pending in state court, this Court will not address these issues. The sole issues before this Court include Defendant's entitlement to discharge and the dischargeability of Defendant's indebtedness, if any, to Plaintiff. An objection to discharge is a core proceeding under 28 U.S.C. § 157(b)(2)(J). Likewise, the determination as to the dischargeability of particular debts is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

■ Pursuant to Section 523(a)(4) of the Bankruptcy Code, debts arising from the debtor's defalcation while acting in a fiduciary capacity are not dischargeable in bankruptcy. To establish the nondischargeability of a debt under 11 U.S.C. § 523(a)(4), Plaintiff must show the following: the establishment of an express trust status; a party in trust acting in a fiduciary capacity; and a breach of that relationship by at least "defalcation" of funds. *In re Interstate Agency, Inc.,* 760 F.2d 121 (6th Cir.1985). Plaintiff must show by a preponderance of the evidence that the debt in question was incurred through defalcation while acting in a fiduciary capacity. *In re Carroll,* 140 B.R. 313 (Bkrtcy.D.Mass.1992) (citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

■ Generally, the term "fiduciary" applies to express or technical trusts, not constructive or implied trusts created by operation of law or matter or equity. *In re Interstate Agency, supra* (quoting *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934)). The question regarding who is a fiduciary for purposes of Section 523 is subject to interpretation under federal law. The nature of the legal interests is subject to state law. *In re Johnson,* 691 F.2d 249, 251 (6th Cir.1982).

■ Under Ohio law, the attorney-client relationship is *highly* fiduciary in nature (emphasis added). *Adams v. Fleck,* 8 Ohio Op.2d 302, 154 N.E.2d 794 (1958), *aff'd* 171 Ohio St. 451, 172 N.E.2d 126, 14 O.O.2d 313 (1961). The very existence of the attorney-client relationship raises a presumption that trust and confidence exists between these parties. *Adams v. Fleck, id.* Consequently, the relationship requires a high degree of fidelity and good faith. *Holtzman v. Hopwood Realty, Incorporated,* 77 Ohio App. 515, 65 N.E.2d 409, 33 O.O. 348 (1946). An attorney should never accept employment if the exercise of professional judgment may be affected by his own financial, personal or business interests. MODEL CODE OF PROFESSIONAL CONDUCT Rule 1.7 cmt. (1983). Likewise, an attorney should never accept employment if personal interests will adversely affect the services rendered to the client.

MODEL CODE OF PROFESSIONAL CONDUCT Rule 1.7 cmt. (1983). An attorney must not intentionally fail to seek the lawful objective of the client through reasonable available means permitted by law and the Disciplinary Rules. MODEL CODE OF PROFESSIONAL CONDUCT Rule 1.2 cmt. (1983). When an issue arises between an attorney and client, the burden of proof rests with the attorney to prove entitlement to compensation for the legal services rendered. *Holtzman, supra,* at 523, 65 N.E.2d 409.

 Defalcation involves the failure to account for money or property held in a fiduciary capacity. *In re Carroll, id,* (citing *American Savings & Loan Association v. Weber (In re Weber),* 99 B.R. 1001 (Bankr. C.D.Utah 1989)). It does not require a showing of intentional wrongdoing. *In re Carroll, id,* (citing *Compugraphic Corp. v. Golden (In re Golden),* 54 B.R. 957, 964 (Bankr.D.Mass.1985)). Defalcation may result from negligence or ignorance. *In re Carroll, id,* (citing *LaPointe v. Brown (In re Brown),* 131 B.R. 900 (Bankr.D.Me.1991)).

 The attorney-client relationship in this case gives rise to a fiduciary relationship and there is no question that an express trust existed between the Plaintiff and Defendant. The threshold question is therefore whether Plaintiff has proven by a preponderance of the evidence that Defendant's acts of withdrawing funds from the estate constitute fraud or defalcation while acting in his fiduciary capacity. The Court gleans from the evidence that Defendant had a financial conflict which caused him to become derelict in the duties imposed upon him by the Code of Professional Conduct. The financial conflict contributed to Defendant's failure to seek the legal objectives in maintaining the estate. As a consequence, Defendant committed at least three (3) acts of defalcation within the context of his role as fiduciary. First, but for the preparation of the forms needed to probate an estate, there is no evidence that Defendant performed services which coincide with his withdrawal of fees. Second, Defendant withdrew a total of Fifty Thousand Four Hundred Eight Two and 68/100 Dollars ($50,482.68) from the estates. These amounts exceed the customary 6% charged by Defendant to administer an estate. There is no evidence that Defendant performed extraordinary services which would entitle him to charge fees in excess of his customary rate. Third, Defendant was negligent in failing to place a substantial portion of the estate in an interest bearing account.

This Court finds that Defendant is liable for any debt emanating from his acts of defalcation committed while acting in a fiduciary capacity. Accordingly, any amount of Defendant's fees which the Marion County Probate Court deems reimbursable to Plaintiff and/or the Highland estates should be excepted from discharge under 11 U.S.C. § 523(a)(4). There is no evidence that Defendant is not entitled to a discharge of his other dischargeable debts under 11 U.S.C. § 727.

In reaching the conclusion found herein, the Court has considered the demeanor of witnesses, all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

*Accordingly, it is*

**ORDERED** that any indebtedness which the Marion County Probate Court determines is reimbursable to Plaintiff and/or the Highland estates by Defendant be, and is hereby, excepted from Defendant's discharge pursuant to 11 U.S.C. § 523(a)(4).

It is **FURTHER ORDERED** that pursuant to 11 U.S.C. § 727, Defendant be, and is hereby, entitled to a discharge from all other dischargeable debts.