In re Louis I. BAER, Debtor.

DAVIDCRAFT CORPORATION, an Illinois Corporation and Davidcraft, Ltd., a South Korean Corporation, Plaintiffs,

v.

Louis I. BAER, Defendant.

Bankruptcy No. 892–84503–478.
Adv. No. 892–8471–478.

United States Bankruptcy Court,
E.D. New York.

Nov. 23, 1993.

Siegel, Lynn & Capitel, Ltd., Northbrook, IL by James A. Reiman, Bradley B. Falkof, for plaintiffs.

Sawyer, Davis, Halpern & Rosenstock, Garden City, NY by Kenneth Halpern, for debtor/defendant.

### DECISION RE: DISCHARGEABILITY PURSUANT TO SECTIONS 523(a)(4) & 523(a)(6) OF THE BANKRUPTCY CODE

DOROTHY EISENBERG, Bankruptcy Judge.

Davidcraft Corporation ("Davidcraft") and Davidcraft, Ltd. (collectively the "Plaintiffs") have filed an adversary proceeding in the instant bankruptcy proceeding seeking a determination by this Court that a money judgment entered against Louis Baer (the "Debtor") on behalf of the Plaintiffs in the amount of $324,405.67 plus interest is non-dischargeable, pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6). The Debtor's debt to Davidcraft is a result of a judgment entered on July 8, 1992, by the United States District Court for the Southern District of New York against the Debtor and a related corporate co-defendant. Plaintiffs have brought on the instant motion for summary judgment, seeking a determination from this Court that based upon the findings of the Court of the Southern District of New York against, *inter alia,* the Debtor, the Debtor's debt to the Plaintiffs is non-dischargeable as a matter of law pursuant to §§ 523(a)(4) and 523(a)(6) of the Code. Based on the pleadings and memoranda submitted, including this Court's review of the Memorandum Decision and Order in the prior action in the Southern District of New York, 1992 WL 162997, and based upon the theories of collateral estoppel and res judicata, this Court grants the Plaintiffs' motion for summary judgment.

With respect to Plaintiffs' motion to strike the affidavit of Louis I. Baer, which was submitted in support of the Debtor's opposition to the motion for summary judgment, this Court declines to grant the Plaintiffs' motion. However, this Court finds that the affidavit of the Debtor is wholly insufficient to rebut the Plaintiffs' motion for summary judgment.

### FACTS

The Plaintiffs had brought an action against, *inter alia,* Danu International, Inc. ("Danu"), the Debtor and his son Alan Baer in the Southern District of New York seeking damages for wrongful diversion of Davidcraft's sales of cameras and photographic equipment. Specifically, the Plaintiffs alleged tortious interference with prospective economic advantage, conversion of the Plaintiffs' property, wrongful appropriation of the Plaintiffs' trade secrets, unfair competition, and intentional tort. The Debtor was represented by counsel in connection with the preparation for trial and at trial as well. However, the Debtor himself was not present at trial. Although the Debtor made representations in his opposition to the motion for summary judgment that a request to adjourn the trial to a time when he could attend was denied and that a last minute request by his counsel to withdraw was denied, neither statement is substantiated by documentary evidence, nor would it affect this Court's determination. The only evidence Debtor has provided is a copy of a letter from his physician that he was bedridden at or about the time alleged. Mr. Baer's wife and son, who were also defendants and officers of Danu, the defendant corporation, did participate in the trial. The District Court made the following findings of fact after a trial which lasted approximately two days:

In September of 1986, Davidcraft retained the Debtor as a sales representative to secure purchase orders for cameras and related equipment from J.C. Penney ("J.C.P."). Davidcraft agreed to pay Baer a commission of ten (10%) percent of Davidcraft's costs for each item which the Debtor sold to J.C.P. In March, 1989, J.C.P. purchased from Davidcraft four (4) types of a 35mm camera and assorted tri-pods under the Pro Spec name.

In addition to these products, Davidcraft began in 1989 to source other cameras and equipment in preparation for the 1990 Pro Spec line. These items were to be ordered by J.C.P. for use in J.C.P.'s 1990 catalogues. However, it came to the attention of David-

craft that Baer was receiving an added fee in the amount of $5.00 per item from J.C.P., which fee was not authorized by the Plaintiff or J.C.P. Despite certain allegations made during the trial, the District Court made no finding of fact as to whether this added fee was being transferred by Debtor to Mr. Cahill, J.C.P.'s buyer, as part of a kick-back scheme. In late 1989, the Debtor resigned as Davidcraft's sales representative.

On December 1, 1989, Davidcraft closed their New York office and terminated Irving Zimbler, another employee of Davidcraft. Following its closing, the office was sealed with telephones, a word processor, a copy machine, a fax machine, office furniture, and two file cabinets still inside. The file cabinets contained the correspondence between the New York Office and the Chicago Office, detailing the various J.C.P. transactions being worked on, as well as the specifications for the manufacture of the products to be sold to J.C.P. When the office was unsealed on April 1, 1990, it was found empty.

On December 29, 1989, the Debtor formed a Florida corporation named Danu in which he was the sole shareholder and president. His son, Alan Baer, was employed by Danu as a bookkeeper and was responsible for writing Danu's corporate checks.

Danu adhered to few corporate formalities. It did not establish a corporate checking account until after April 12, 1990. In addition, out of the corporate checking account, funds were used to pay for various other business ventures of the Debtor, as well as personal expenses for all of the members of the Baer family. The District Court found that the purpose of Danu was to continue to do business with J.C.P. by selling under the name of Danu, the same cameras and electronic products, which Davidcraft had already developed for J.C.P. The Debtor's son and Mr. Zimbler, a former employee of Davidcraft, were hired by Danu to transfer the furniture, equipment and files from Davidcraft's premises to Danu's New York Office, without the knowledge of Davidcraft in order to "pick up exactly where Davidcraft left off."

By letter dated January 2, 1990, which was written on Danu's stationary and addressed to Mr. Cahill of J.C.P., J.C.P. was falsely advised, supposedly by the Managing Director of Davidcraft, that Davidcraft had changed its name to Danu and that Danu would assume "all obligations for the merchandise supplied up to the present by Davidcraft." The District Court found that the Debtor arranged for the letter to be written upon the request of Mr. Cahill, who wanted some documentary evidence to justify his purchasing goods from Danu instead of Davidcraft. As a result of this deception, Danu was able to obtain the camera, binoculars and camera bag sourcing deals, which previously had been set up between J.C.P. and Davidcraft.

In August, 1990, the Danu scheme began to unravel and J.C.P.'s accounting department became aware that Danu was unrelated to Davidcraft. As a result of the investigation, J.C.P. terminated its relationship with Danu and resumed business with Davidcraft in January, 1991.

Based on the above findings of fact, the District Court made several findings that are critical to this motion. First, the District Court found that Danu was the alter ego of the Debtor and therefore, the Debtor cannot be shielded from liability by Danu. The District Court also found the Debtor individually liable without piercing the corporate veil. The District Court further made a finding that through the Debtor's fraudulent conduct, the defendants tortiously interfered with Davidcraft's business opportunities and that but for the defendants' conduct, Davidcraft would have received the contract with J.C.P. In addition, the Court found that the letter which was fraudulently prepared and sent to J.C.P. and the stealing of Davidcraft's files constituted sufficient wrongful conduct to hold the defendants jointly and severally liable for tortious interference. The Court also found that the defendants misappropriated the trade secrets of Davidcraft for the benefit of Danu, as a result of discovery by improper means.

In addition, the District Court found that the defendants committed conversion of Davidcraft's office equipment and files. Conversion is the exercise of unauthorized do-

minion over property to the exclusion of Plaintiff's rights. The Plaintiff in the District Court action established that the property was removed by Alan Baer and Irving Zimbler on behalf of Danu. In sum, the Defendants, including the Debtor, were held jointly and severally liable for, *inter alia*, tortious interference with existing and prospective business relationship, conversion, misappropriation of trade secrets, unfair competition, and conspiracy. Judgment in the amount of $324,405.67 plus interest was granted against the Defendants jointly and severally. The defendants pursued an appeal of the judgment which appeal was ultimately denied by the Court of Appeals for the Second Circuit.

## DISCUSSION

[1] Section 523(a) of the Bankruptcy Code provides, in pertinent part:

(a) A discharge ... does not discharge an individual debtor from any debt ...

(4) for fraud ... or larceny ...

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Each element of the cause of action must be proven by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 285, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

■ In order to successfully invoke the doctrine of collateral estoppel with respect to this dischargeability action, the following test must be met:

1. the issues sought to be precluded must have been actually litigated;

2. the issues must be the same as those involved in the prior action;

3. the issues must have been determined by valid and final judgment; and

4. the determination must have been essential to the prior judgment.

*In re Billings*, 94 B.R. 803 (Bankr.E.D.N.Y. 1989).

If the Plaintiff obtained the judgment fairly, the Defendant was afforded due process at all times, and the complaint and judgment unambiguously provide findings leading the bankruptcy court to conclude that the judgment debt is necessarily nondischargeable, the Bankruptcy Court may hold on the basis of the state court proceedings that the debt is nondischargeable.

*In re Levinson*, 58 B.R. 831 (Bankr.N.D.Ill. 1986), *aff'd* 66 B.R. 548 (N.D.Ill.1986).

■ First, it is clear that the issues were actually litigated in the Southern District of New York, and the Debtor had a full and fair opportunity for trial of the issues. The Debtor was represented by counsel during the preparation for trial and at the trial as well. The trial took place over two days with both sides presenting evidence. This is precisely the type of fairly obtained judgment described in *Levinson*. Although the Debtor did not attend the trial, there is no evidence that this failure to attend precluded the Debtor from having a full and fair opportunity to have the issues tried. Any other issues regarding the prior trial should have been raised before that Court. This Court must give full faith and credit to the judgment and findings of the Federal Court of the Southern District of New York. *See Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir.1987).

The record in the prior action is more than sufficient to establish larceny on the part of the Debtor by a preponderance of the evidence, thus precluding the Debtor from re-litigating the issue of larceny for the purposes of § 523(a)(4) of the Code. Larceny is defined as the felonious taking of another person's property with the intent to convert it to one's own use or to deprive its owner of its use. *Black's Law Dictionary*, (4th Edition). It is clear from a reading of the District Court opinion that the Debtor intended and succeeded in appropriating a business opportunity as well as physical property from Davidcraft for the Debtor's own benefit. Therefore, this Court is bound by the prior judgment of the Southern District and the Debtor is collaterally estopped from re-litigating this prior finding.

With respect to proving a cause of action under § 523(a)(6) of the Code, this Court must find that the prior action establishes a conversion which is "both willful and malicious." *In re Pommerer*, 10 B.R. 935, 940 (Bankr.D.Minn.1981). Willful conversion has been described as that which is both deliber-

**338**

ate and intentional, which warrants the deduction that transcends a "minimal" or technical wrongdoing. *Id.*

In the instant case, the District Court found that the Plaintiffs had both legal ownership of the property allegedly converted and that the Debtor, among others, exercised "unauthorized dominion over the property to the exclusion of Plaintiff's rights." (Opinion at pg. 9). Moreover, throughout its opinion, the Court clearly found that the activities engaged in by the Debtor to break into the Plaintiff's office and steal property were intentional, deliberate, and in bad faith. (Opinion at pp. 6–8).

As a result of the foregoing, it is clear that the issues sought to be precluded were actually litigated and were determined by a valid and final judgment, despite the fact that the Debtor was not present at the trial. In addition, the findings that the Debtor engaged in larceny and that his acts willfully and maliciously caused injury to the Plaintiff were essential to the prior judgment against him.

Therefore, based upon this Court's reading of the prior action and the appropriate statutory and case law, this Court grants the Plaintiffs' motion for summary judgment and finds that the Plaintiff has established a cause of action under §§ 523(a)(4) and 523(a)(6) of the Code.

### CONCLUSION

This Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334. This adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) and (O). The Debtor's judgment debt in the amount of $324,405.67 plus interest to the date of the petition is non-dischargeable. The Plaintiffs' motion to strike the Defendant's affidavit is denied.

Settle an Order in accordance with this decision.