In re Milton H. KINDRICK, Debtor.

Reba DAVIS, Plaintiff,

v.

Milton H. KINDRICK, Defendant.

Bankruptcy No. 96–3270.
No. 96–32655.

United States Bankruptcy Court,
N.D. Ohio.

July 18, 1997.

John T. Madigan, Toledo, OH, for Plaintiff.

Christian Niklas, Toledo, OH, for Defendant.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after Trial upon Plaintiff's Complaint to Determine Dischargeability. This Court has reviewed the arguments of counsel, exhibits, and the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the debt at issue in this case is dischargeable.

### FACTS

This case concerns the proceeds of the sale of a mobile home. The Plaintiff and Defendant had a personal relationship for three or four years when in February of 1993 they decided to purchase a mobile home together after a fire destroyed the mobile home in which the Plaintiff had been living. Plaintiff received Five Thousand Dollars ($5,000.00) from Social Security Insurance (hereafter "SSI") as a result of the loss of her former home, and wanted to purchase another one. However, the Plaintiff had a credit history which would not enable her to obtain a loan to purchase a new home. The Defendant had a favorable credit history, so they decided to purchase a mobile home together by using the Defendant's name and credit, and the Plaintiff's Five Thousand Dollars ($5,000.00) as a down payment. They purchased the mobile home at issue from Maumee Valley Homes (hereafter "MVH") for Fourteen Thousand Dollars ($14,000.00) by obtaining a loan, in the Defendant's name, for the Nine Thousand Dollar ($9,000.00) difference between the purchase price and the down payment. It was contemplated at the time that the parties would live together, and Defendant claims to have contributed to the One Hundred Forty-two Dollar ($142.00) monthly loan payments while he lived in the mobile home.

On March 1, 1993, shortly after the purchase of the mobile home, the Plaintiff and Defendant signed a document entitled "Addendum to Land Contract Purchase Agreement," which appears to be an attempt to memorialize a sale of the home from Defendant to Plaintiff for the amount of the mortgage, Nine Thousand Dollars ($9,000.00), and payable in monthly installments equal to the monthly mortgage payments, One Hundred Forty-two Dollars ($142.00). The Defendant testified that he drafted the document by copying another document he had used in the past. The Defendant further testified that he drew up this document and signed it at the Plaintiff's request, because she said she needed it to show SSI what she had done with the money she received from the loss of the mobile home which was destroyed by fire. Plaintiff claims that the Addendum to Land Contract Purchase Agreement was an attempt to memorialize the sale of the property from Defendant to Plaintiff because it was titled in his name.

By May of 1993 the parties determined that they could no longer live together, and the Defendant moved out. The Plaintiff continued to dwell in the mobile home and made the monthly payments directly to the mortgage holder. When MVH learned that Plaintiff was interested in selling the home a representative of MVH contacted her. The Plaintiff then signed an Open End Listing Agreement with MVH to sell the home. Thereafter, MVH learned that the title of the home was actually in Defendant's name, and contacted him. Defendant then entered into an Open End Listing Agreement with MVH. MVH then secured a purchaser and the mobile home was sold. After payment of the mortgage and expenses of the sale, the sale yielded Five Thousand One Hundred Fifty-five and 43/100 Dollars ($5,155.43), which was paid to Defendant.

Thereafter, the Defendant offered Plaintiff one-half of the proceeds of the sale. The Plaintiff refused, contending that she was due the entire amount of the proceeds of the sale. Defendant claims that one-half of the proceeds were and are his, because it was his

credit that enabled the purchase of the home in the first place.

*LAW*

**11 U.S.C. § 523. Exceptions to Discharge**

(a) A discharge under section 727, 1141, 1228[a] 1228(b), or 1328(b) of this section does not discharge an individual debtor from any debt—

> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

*DISCUSSION*

Determinations as to the dischargeability of particular debts are core proceedings pursuant to 28 U.S.C. § 157. Thus, this case is a core proceeding.

■ The Plaintiff prays for a determination that the Plaintiff is owed the full amount of the proceeds of the sale, Five Thousand One Hundred Fifty-five and 43/100 Dollars ($5,155.43), and that this debt is nondischargeable pursuant to § 523(a)(4). The Plaintiff argues that the Defendant had a duty to hold title to the property and keep it clean until Plaintiff paid off the mortgage. By not remitting the entire proceeds of the sale the Defendant was taking advantage of the situation, and therefore violated this duty. The Plaintiff also contends that larceny is present as well, because the Defendant took the proceeds under one pretext, then kept them under another. The Plaintiff has cited no authority for these arguments, other than citing a portion of the Ohio Revised Code which makes it a crime for a person to transfer a motor vehicle without delivering to the transferee a certificate of title.

■ Under § 523(a)(4) a debt is nondischargeable if the debt was incurred by "fraud or defalcation while acting in a fiduciary capacity, or by embezzlement, or larceny." Under the plain reading of the statute, the phrase "while acting in a fiduciary capacity" clearly qualifies the words "fraud or defalcation," and not "embezzlement" or "larceny," so that debts resulting from embezzlement or larceny are nondischargeable whether or not done while acting in a fiduciary capacity. *In*

*re McCoy,* 189 B.R. 129 (Bankr.N.D.Ohio 1995), *In re Baer,* 161 B.R. 334 (Bankr. E.D.N.Y.1993), Collier on Bankruptcy, § 523.1 0[ I ][c], 523–71 (15th ed. rev.Mar. 1997). It is the Plaintiff's burden to show by a preponderance of the evidence that the dischargeability exception is warranted. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

The Sixth Circuit Court of Appeals has recently addressed the nondischargeability provision under § 523(a)(4) for debts arising from defalcation while acting in a fiduciary capacity. The Court explained:

> The federal courts are not in perfect agreement as to the requirements necessary to prove defalcation under § 523(a)(4). A review of the cases reveals that the courts generally agree that defalcation requires: 1) a fiduciary relationship; 2) breach of that fiduciary relationship; and 3) a resulting loss. They often differ, however, as to the nature of the fiduciary relationship necessary to trigger the defalcation provision of § 523(a)(4).

> Some federal courts construe the term "fiduciary capacity" found in the defalcation provision of § 523(a)(4) narrower than they construe the term "fiduciary relationship" as used in the legal professional generally. *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1372 (10th Cir.1996) (holding general fiduciary duties of confidence, trust, loyalty and good faith insufficient to establish the necessary fiduciary relationship for purposes of § 523(a)(4)); *Clark v. Allen (In re Allen),* 206 B.R. 602, 606 (Bankr.M.D.Fla.1997) (noting that the traditional meaning of the term fiduciary is far too broad for bankruptcy purposes.); *Ducey v. Doherty (In re Ducey),* 160 B.R. 465, 469 (Bankr.D.N.H.1993) (noting that the term fiduciary in § 523(a)(4) is narrower in scope than the word as traditionally used under sate law); *Hartwood Aviation, Inc. v. Hamilton (In re Hamilton),* 147 B.R. 779, 783 (Bankr.D.Col.1992) (holding a duty of care, without more, insufficient to satisfy the fiduciary relationship element of § 523(a)(4). The federal courts adopting this narrow interpretation of fiduciary for purposes of the Bankruptcy Code gen-

erally hold that an express or technical trust is necessary to trigger the defalcation provision of § 523(a)(4). *Fowler Bros.*, 91 F.3d at 1371 (holding that an express or technical trust must exist to establish a fiduciary relationship under § 523(a)(4)); *Clark*, 206 B.R. at 606 (requiring a plaintiff to prove the existence of an express or technical trust to satisfy the fiduciary element of § 523(a)(4)); *Tillman v. Mason (In re Mason)*, 191 B.R. 50, 54 (Bankr. S.D.N.Y.1996) (requiring an express or technical trust relationship between the debtor and aggrieved creditor to trigger application of § 523(a)(4)).

     \*     \*     \*     \*     \*     \*

Although this court has not yet explicitly identified the nature of the fiduciary relationship required under the defalcation provision of § 523(a)(4), we are guided by our previous decision in *Capitol Indem. Corp. v. Interstate Agency, Inc. (In re Interstate Agency)*, 760 F.2d 121 (6th Cir. 1985), in siding with those courts which adopt the narrow interpretation of the term. In *Interstate Agency*, we defined defalcation as "encompassing embezzlement, the 'misappropriation of trust funds held in any fiduciary capacity,' and the 'failure to properly account for such funds.'" *Id.* at 125 (quoting Black's Law Dictionary, 375 (5th ed.1979)) (emphasis added). We believe that this definition, which focuses upon the embezzlement, misappropriations, or failure to properly account for "trust funds", necessarily implies the existence of an express or technical trust relationship. See *Highland v. Hix (In re Hix)*, 161 B.R. 401, 404 (Bankr. N.D.Ohio 1993) (citing *Interstate Agency*, 760 F.2d 121, to hold that plaintiff must prove an express trust status to establish the nondischargeability of a debt under § 523(a)(4)).

*In re Garver*, 116 F.3d 176, 179 (6th Cir.(Ohio) 1997) (footnote omitted).

In the case at bar, Plaintiff has not shown the existence of an express trust that would show that Defendant was or should have been acting in a fiduciary capacity. Indeed,

Plaintiff has not offered any legal authority to prove the existence of any kind of trust. Accordingly, the alleged debt at issue in this case is not nondischargeable as a debt arising from defalcation while acting in a fiduciary capacity.

█ Under § 523(a)(4), a debt may also be nondischargeable if it arises from embezzlement. The Sixth Circuit Court of Appeals has also recently explained this provision:

> Federal law defines embezzlement under section 523(a)(4) as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Gribble v. Carlton (In re Carlton)*, 26 B.R. 202, 205 (Bankr.M.D.Tenn.1982) (quoting *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895)). A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud. *Ball v. McDowell (In re McDowell)*, 162 B.R. 136, 140 (Bankr.N.D.Ohio 1993).

*In re Brady*, 101 F.3d 1165, 1172–1173 (6th Cir.1996).

█ In the case at bar, the dispositive issue is the nature of the agreement between Plaintiff and Defendant when they purchased the home, and whether the Defendant acted with fraudulent intent when he offered the Plaintiff only one–half of the proceeds of the sale. Though this Court is not at all certain that Defendant could prevail under the theory that he only owed Plaintiff the value of one–half of the proceeds of the sale, this Court nevertheless finds that the Defendant *believes* he is entitled to one–half. Therefore, he has not acted with fraudulent intent. The purchase of the mobile home was clearly done to benefit both parties. Defendant's benefit was to be a place to live, in return for which he allowed the risk to his credit rating, and would help with payments on the mortgage.[1] When the parties' personal relationship ended and Defendant moved out, there

---

1. The Plaintiff claims to have made all payments on the mortgage. Defendant testified that both

he and Plaintiff contributed to payments on the mortgage while he lived there.

was no longer any benefit to Defendant, but he continued to allow Plaintiff to reside in the home, even though it was clearly in his name.[2] In this particular scenario, and judging from the testimony of the witnesses at trial, this Court concludes that Defendant did not claim one–half of the proceeds with fraudulent intent. The fact that he may have in fact been wrong is irrelevant to the dischargeability determination in this case. Further, because the related bankruptcy case is a no–asset Chapter 7 case, the validity or extent of the Plaintiff's claim is irrelevant to the related bankruptcy case as well.

█ The Plaintiff has also asserted that the debt arose from larceny. "Larceny can be defined as the actual or constructive taking away of property of another without the consent and against the will of the owner or possessor with the intent to convert the property to the use of someone other that the owner." *In re McCoy,* 189 B.R. 129 (Bankr.N.D.Ohio 1995) citing Black's Law Dictionary (6th ed.1991). As distinguished from embezzlement, the original taking of the property must be unlawful. Collier on Bankruptcy, § 523.10[2], 523–76 (15th ed. rev. March 1997). In this case, the larceny exception would simply not apply because Defendant came into possession of the property lawfully. Further, Plaintiff's citation to state law is misplaced. For purposes of section 523(a)(4), a bankruptcy court is not bound by the state law definition of larceny, but rather may follow federal common law. *Id.* Finally, even if the § 523(a)(4) larceny provision did apply here, as with the embezzlement exception this Court does not find that Defendant acted with the intent to wrongfully deprive Plaintiff of the proceeds of the sale. He simply thought he was entitled to one–half.

For all these reasons, this Court concludes that the Defendant should not be denied a discharge of the debt at issue herein pursuant to § 523(a)(4). In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

*ORDERED* that the debt, if any, of Defendant Milton H. Kindrick to Plaintiff Reba Davis be, and is hereby, determined *DISCHARGEABLE.*

---

2. The "Addendum to Land Contract Purchase Agreement" was insufficient to provide Plaintiff with any security interest in the mobile home or therefore any proceeds of its sale. Under Ohio law a motor home is a motor vehicle, and the title is unequivocal evidence of ownership. At best Plaintiff may have an unsecured claim against Defendant.