**In re Susan HARTMAN, Debtor.**

**The Cadle Company, II, Inc., Plaintiff,**

**v.**

**Susan Hartman, Defendant.**

**Bankruptcy No. 99–20530T.**
**Adversary No. 99–2210.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 1, 2000.

---

Robert M. Davison, Miller & Davison, Bethlehem, PA, for debtor/defendant.

Kevin T. Fogerty, Allentown, PA, for plaintiff.

David Eisenberg, Eisenberg & Van Horn, Allentown, PA, trustee.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Before the court is a complaint filed by Plaintiff, The Cadle Company, II, Inc. ("Plaintiff")[1] objecting to the dischargeability of a debt owed to it by Debtor, Susan Hartman ("Debtor"). Plaintiff's complaint is based upon 11 U.S.C. § 523(a)(4) and (6). Because we find that Plaintiff has not met its burden of proof, we rule in favor of Debtor.

The parties have stipulated to the following facts. On February 3, 1999, Debtor filed a voluntary bankruptcy petition under Chapter 7 of the United States Bankruptcy Code. Debtor had been a principal shareholder as well as a member of the Board of Directors of S.S. Maxwell, Inc. ("Maxwell"), a Pennsylvania corporation. Maxwell traded under the name "Petite Shops" and at one time maintained five different retail clothing store locations throughout Pennsylvania.

On September 21, 1994, First Lehigh Bank entered into a loan agreement with Maxwell which was embodied in a Line of Credit Agreement and a Line of Credit Note. At that time, Maxwell was engaged in the retail clothing business and had equipment, inventory, and fixtures carried

---

1. The Cadle Company, II, Inc. is the legal successor in interest to the rights and claims of First Lehigh Bank with respect to the obligations of S.S. Maxwell, Inc.

on its books at a value of $250,000.00 to $350,000.00. Pursuant to the Line of Credit Agreement and Line of Credit Note, First Lehigh Bank advanced the principal sum of $250,000.00 to Maxwell. Maxwell then executed a Security Agreement with First Lehigh Bank, along with related UCC–1 Financing Statements signed by the Debtor, as President of Maxwell.

Debtor was frequently forced to close her stores in the fall and winter months of 1997 due to severe weather conditions, which caused loss of sales and prevented Debtor from purchasing goods for the spring of 1998. In November of 1997, Debtor was hospitalized for stress related reasons. The Maxwell loan from First Lehigh Bank went into default in December of 1997 and thereafter the bank accelerated the loan and claimed a total due of $202,933.96, plus continuing interest at $53.63 per diem.

As of December 31, 1997, Debtor's inventory of $33,097.00 was reduced by sales of $3,153.00 and the balance was sold to a jobber for $5,000.00 by Sam Ninfo, Treasurer/Secretary of Maxwell. Debtor believed the $5000.00 price was reasonable for the sale. Debtor was at all relevant times a director and officer of Maxwell.

■ This court is asked to determine whether or not the debt owed by Debtor to Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(4) and (a)(6). Section 523(a)(4) states, "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Section 523(a)(4) deals with fraud or defalcation while acting in a fiduciary capacity and embezzlement or larceny while not acting in a fiduciary capacity. *Collier on Bankruptcy*, 15th Ed.Rev. ¶ 523.10[1][c] at 523–72; *accord, Reiter v. Napoli (In re Napoli)*, 82 B.R. 378, 381 (Bankr.E.D.Pa. 1988). Under the first element, the definition of "fiduciary" for purposes of section

523(a)(4) is a question of federal law. *See Tudor Oaks Ltd. Partnership v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir.1997), *cert. denied*, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998); *Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137, 155 (Bankr.D.Md.1999). The term is limited to instances involving express or technical trusts which were "imposed before and without reference to the wrongdoing that caused the debt." *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir.1996). In other words, to disqualify a debt from discharge under section 523(a)(4), the fiduciary duty must have existed prior to the transaction from which the debt arose and the debt must have arisen as a result of the fiduciary acting in that capacity. *Lewis*, 97 F.3d at 1185.

With respect to the provision's second element, the term "defalcation" is not defined in the Bankruptcy Code. However, in *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2nd Cir.1937), the court concluded that "when a fiduciary takes money upon a conditional authority which may be revoked and knows at the time it may, he is guilty of a 'defalcation' though it may not be 'fraud' or an 'embezzlement,' or perhaps not even a 'misappropriation'." *Central Hanover*, 93 F.2d at 511–12. Cases interpreting section 523(a)(4) have held that if the debtor misappropriates funds it is unnecessary to prove that the debtor committed an intentional wrong. *Leeb v. Guy (In re Guy)*, 101 B.R. 961, 991 (Bankr.N.D.Ind.1988). *See also Lewis*, 97 F.3d at 1186.

■ Plaintiff argues that Debtor was acting in a fiduciary capacity for two reasons. First, Plaintiff contends that Debtor "as primary shareholder, director and President of Maxwell, owed a fiduciary duty to Maxwell and to Cadle regarding disposition of the collateral pledged to Cadle as security for loans extended to Cadle by First Lehigh Bank." Plaintiff's Brief at 10. We disagree because it is well established that "the term 'fiduciary' as used in

section 523(a)(4) does not 'encompass ordinary commercial relationships such as those of principal/agent or debtor/creditor.'" *Windsor v. Librandi (In re Librandi)*, Bankr.Nos. 1–93–00422, 1–93–00406 A., 1994 WL 832019, at *5 (Bankr.M.D.Pa. Dec.29, 1994) (quoting *In re Sawyer*, 112 B.R. 386, 389 (D.Colo.1990)).

 Second, Plaintiff argues that "the Security Agreement executed by Debtor, on Maxwell's behalf, created an[ ] express trust relationship ... Debtor violated and [sic] committed a defalcation of her fiduciary responsibility/duty owed to Cadle, when she sold off Maxwell's collateral-particularly inventory—, and failed to remit those proceeds to be applied against the debt owed by Maxwell to First Lehigh Bank ...".[2] Plaintiff's Brief at 10. In *Pennsylvania Manufacturers' Assoc. Ins. Co. v. Desiderio (In re Desiderio)*, 213 B.R. 99 (Bankr.E.D.Pa.1997), the court held that for purposes of establishing a fiduciary relationship, the Debtor must be a trustee under an express or technical trust[3] and stated that:

> In order to establish the requisite "express trust," we stated in *Kaplan* that the § 523(a)(4) plaintiff is required to prove the presence of
>
> > [t]he prerequisites for the creation of an express trust relationship under Pennsylvania law [which] are, as we thusly held in *In re Kulzer Roofing, Inc.*, 139 B.R. 132, 139–40 (Bankr. E.D.Pa.), *aff'd*, 150 B.R. 134 (E.D.Pa. 1992), quite demanding:
> >
> > "The elements of an express trust, as developed by Pennsylvania case law, are (1) an express intent to create a trust; (2) an ascertainable res; (3) a sufficiently certain beneficiary; and (4) a trustee who 'owns' and administers the res for the benefit of another

(the beneficiary)." *See In re Penn Central Transportation Co.*, 486 F.2d 519, 524 (3rd Cir.1973), cert. denied sub nom. *Baker v. Indiana H.B.R.R.*, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974) ("*Penn Central I*"); *Sherwin [v. Oil City Nat'l Bank,]* 229 F.2d [835], at 838, 839 [ (3rd Cir. 1956) ]; *In re I.D. Craig Service Corp.*, 125 B.R. 453, 456 (Bankr. W.D.Pa.1991); *In re CS Associates*, 121 B.R. 942, 959 (Bankr.E.D.Pa. 1990); *In re Shervin*, 112 B.R. 724, 734 (Bankr.E.D.Pa.1990); and *Presbytery of Beaver–Butler United Presbyterian Church v. Middlesex Presbyterian Church*, 507 Pa. 255, 268–69, 489 A.2d 1317, 1324, cert. denied, 474 U.S. 887, 106 S.Ct. 198, 88 L.Ed.2d 167 (1985)(the absence of any of the express trust elements to be present is fatal to the contention that a trust exists) *See also e.g., Thompson's Will*, 416 Pa. 249, 254–55, 206 A.2d 21, 25 (1965).

*Id.* at 705. *See also, e.g., In re Librandi*, 183 B.R. 379, 382–86 (M.D.Pa.1995); and *In re Napoli*, 82 B.R. 378, 381–82 (Bankr.E.D.Pa.1988).

*Desiderio*, 213 B.R. at 103.

 In the instant case we find that the Security Agreement in question does not create an express trust. The Security Agreement executed by Debtor does not set forth an intent by the parties to create a trust; nor does it designate an ascertainable res, trustee or beneficiary. Without separate and express trust language, the Security Agreement creates no more than a debtor/creditor relationship. Absent evidence that indicates Debtor held funds or specific property in trust for Plaintiff, this court is unable to conclude that an express trust was created and therefore, we find

---

**2.** It is the plaintiff's burden to establish the existence of an express trust. *Chicago Title Ins. Co. v. Manzo (In re Manzo)*, 106 B.R. 69, 71 (Bankr.E.D.Pa.1989).

**3.** Relevant state law governs the existence of an express trust. *E.g., Lovell v. Stanifer (In re*

*Stanifer)*, 236 B.R. 709, 714 (9th Cir. BAP 1999); *Holaday v. Seay (In re Seay)*, 215 B.R. 780, 785 (10th Cir. BAP 1997); *Tillman v. Mason (In re Mason)*, 191 B.R. 50, 53 (Bankr. S.D.N.Y.1996).

**674**

that a fiduciary relationship for the purposes of section 523(a)(4) has not been established.[4]

■ Next, we turn to the question of whether Debtor embezzled funds. In *Rolley v. Spector (In re Spector)*, 133 B.R. 733, 738–41 (Bankr.E.D.Pa.1991), the court defined embezzlement and larceny for the purposes of section 523(a)(4) as follows:

> [Embezzlement is] the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful or with [the] consent of the owner, while in larceny the felonious intent must have existed at the time of the taking. 3 Collier on Bankruptcy, ¶ 523.14[3], at 523–113. *See also In re Crosswhite*, 91 B.R. 156, 159 (Bankr. M.D.Fla.1988); *In re Ramonat*, 82 B.R. 714, 720; and *In re Salamone*, 78 B.R. 74, 77 (Bankr.E.D.Pa.1987).

*Spector*, 133 B.R. at 741. In order to establish a claim of embezzlement under section 523(a)(4), the plaintiff must show that:

> "(1) the debtor appropriated [the subject] funds for his or her own benefit; and (2) the debtor did so with fraudulent intent or deceit." (quoting *In re Weber*, 892 F.2d 534, 538 (7th Cir.1989)).
> Essential to both larceny and embezzlement is the element of fraudulent intent. (citations omitted). However, a fiduciary or trust relationship is not required in order to find a debt nondischargeable by an act of embezzlement or larceny. (citations omitted).

*Sullivan v. Clayton (In re Clayton)*, 198 B.R. 878, 885 (Bankr.E.D.Pa.1996).

In the instant case, Plaintiff clearly has not established a claim of embezzlement under section 523(a)(4). Plaintiff argues that the Security Agreement obligated Debtor to account for and pay to First Lehigh Bank any proceeds received from inventory, equipment and fixtures which the Debtor failed to do. Moreover, Plaintiff claims that Debtor used these proceeds to pay other creditors and some of Debtor's personal expenditures causing Plaintiff to be damaged by at least $175,483.00. We disagree.

■ Essential to a finding of embezzlement is the showing of fraudulent intent. *Clayton*, 198 B.R. at 885. Here, Plaintiff is unable to establish this requisite state of mind with respect to Debtor. Debtor has adequately shown that almost all of the proceeds she received from inventory, equipment and fixtures were reinvested in the business for traditional business purposes and used to pay normal business debts. Although Debtor admitted to using $992.00 from the sale of miscellaneous assets to pay for her personal medical bills, Debtor produced uncashed salary checks to herself, totaling $53,836.28. Moreover, Debtor has provided evidence that she made personal loans to Maxwell. Debtor withdrew her retirement account in the amount of $70,979.26, charged $40,000.00 on her personal credit card and deposited these funds into the corporate bank account in yet another effort to save the company. We find this to be sufficient evidence that Debtor did not harbor the requisite fraudulent intent to embezzle First Lehigh Bank's collateral for her own personal gain.

■ Lastly, Plaintiff argues that the debt should not be discharged pursuant to 11 U.S.C. § 523(a)(6), which states that a discharge in bankruptcy "does not discharge an individual debtor from any debt for willful and malicious injury by the

4. We note that "the scope of technical and express trusts 'is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law.' " *State of New Jersey v. Kaczynski (In re Kaczynski)*, 188 B.R. 770, 774 (Bankr.D.N.J.1995) (quoting *In re Librandi*, 183 B.R. 379, 382 (M.D.Pa.1995)). However, in the case before us, there is no statute or common law authority which would create a trust type obligation and, therefore, this analysis does not advance Plaintiff's argument.

debtor to another entity." The Third Circuit Court of Appeals held that a debtor's actions are willful and malicious if they are conducted with "the purpose of producing injury or substantial certainty of producing injury." *Conte v. Gautam (In re Conte),* 33 F.3d 303, 307 (3rd Cir.1994); *accord Geiger v. Kawaauhau (In re Geiger),* 113 F.3d 848, 852–54 (8th Cir.1997), *aff'd,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Therefore, in order to have the debt owed to it by Debtor excepted from discharge under section 523(a)(6), Plaintiff must show that Debtor acted deliberately and with the purpose of producing injury or with substantial certainty that her actions would produce injury. *Conte,* 33 F.3d at 307–309. When a creditor challenges the dischargeability of a debt, it is necessary that the creditor prove by a preponderance of the evidence that the debtor willfully and maliciously injured the creditor or his property. *Grogan v. Garner,* 498 U.S. 279, 288, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *DeMarco v. Grubb, (In re Grubb),* 1996 WL 230019, *2 (E.D.Pa. May 3, 1996).

■ Plaintiff specifically contends that Debtor is "sophisticated and savvy [and] Debtor unquestionably had knowledge of the loan documents she had signed on behalf of Maxwell, including the Security Agreement giving First Lehigh Bank a lien against—and right to the proceeds from the sale of—, collateral which [sic] constituted all of the assets of Maxwell's business." Plaintiff's Brief at 10. We disagree.

Although Debtor has worked in the retail garment industry since 1960, Debtor relied on her accountant, payroll company and Maxwell's Secretary/Treasurer, Sam Ninfo, for the business details of her stores, including the preparation of Maxwell's federal tax returns. Debtor testified that she was hospitalized in the latter portion of 1997 and relied even more on Ninfo during the final stages of the business. Clearly, under these facts, Debtor cannot be characterized as a sophisticated business woman who was acting with "the

purpose of producing injury" to First Lehigh Bank or with "substantial certainty" that injury would result to First Lehigh Bank. *Conte,* 33 F.3d at 307. Moreover, a commercial lending officer of First Lehigh Bank testified that Debtor and Ninfo informed him of their intention to close the Hazleton store and place its fixtures in the remaining three stores. Debtor's act of informing the officer of First Lehigh Bank that fixtures would be moved from the defunct store to the remaining stores cannot be interpreted as an action taken with the "purpose of producing injury" to First Lehigh Bank or as an action taken with "substantial certainty" that injury would result to First Lehigh Bank. *Conte,* 33 F.3d at 307.

For all of the foregoing reasons, we conclude that the debt in question is not rendered nondischargeable under 11 U.S.C. § 523(a)(4) or (6). Our decision today is consistent with the "fresh start" policy of the Bankruptcy Code, which allows an honest debtor to have a completely unencumbered new beginning. *Grogan,* 498 U.S. at 286–287, 111 S.Ct. 654. In our view, Debtor herein is entitled to that fresh start.