In re Gina M. GIARRATANO, a/k/a
Gina Comegys, Debtor.

Willard W. Webber, Jr., Appellant,

v.

Gina M. Giarratano, a/k/a Gina
Comegys, Appellee.

Civ. Action No. 03–1092–KAJ.
Bankruptcy No. 02-12126.
Adversary No. 02–07138–MFW.

United States District Court,
D. Delaware.

Nov. 29, 2004.

Tiffany Anne Poole, Rahaim & Saints, Wilmington, DE, for Debtor.

Jeffrey S. Welch, Welch & Associates, Wilmington, DE, for Appellant.

### MEMORANDUM ORDER

JORDAN, District Judge.

## I. INTRODUCTION

Presently before me is an appeal by pro se creditor Willard W. Webber, Jr. ("Creditor") from the September 3, 2003 Order of the United States Bankruptcy Court for the District of Delaware denying Creditor's Non–Dischargeability Complaint and denying Creditor's Motion to Dismiss Gina M Giarratano's ("Debtor") bankruptcy case for bad faith filing.[1] (Docket Item "D.I." 1; D.I. 3, Item "I." 8 at 1–2.) I have jurisdiction under 28 U.S.C. § 158(a) to hear appeals on final judgments, orders and decrees from the bankruptcy court. For the reasons that follow, the bankruptcy court's Order is affirmed.

## II. BACKGROUND

In June 2000, Creditor hired Debtor as an administrative assistant. (D.I. 3, I. 1 at 2.) Thereafter, a romantic relationship developed between the two, and, over the course of eighteen months, Creditor continuously gave Debtor money in the form of checks totaling approximately $60,000. (*Id.* at 1–2.) The checks break down into the following three categories: (1) Monthly Checks; (2) Specific Purpose Checks, and; (3) The "$12,000" Check. (D.I.3, I.17, Ex. B.) The Monthly Checks were given to Debtor from January 2001 through De-

---

1. *In re Giarratano,* 299 B.R. 328 (Bankr. D.Del.2003).

cember 2001 with each check ranging from $2,000 to $2,500. (D.I. 26 at 3.) The Specific Purpose Checks were given to Debtor during that same period and were specifically to pay for Debtor to have the locks on her doors changed, for her son's football camp, for veterinary expenses, and for Christmas gifts. (*Id.*) The $12,000 Check was given to Debtor in July 2000. (*Id.*) Debtor represented to Creditor that she needed the $12,000 to pay off a credit card debt that her mother incurred on Debtor's credit card. (D.I. 3, Tr. at 82.)

On April 10, 2002, after the parties' romantic relationship ended, Creditor attempted to recover the money he had given Debtor by filing two separate civil suits in the Court of Common Pleas of the State of Delaware. (D.I. 3, I. 1 at 3.) When Debtor failed to file a response to the Complaints, default judgments were entered against her. (*Id.* at 3–4.)

On July 23, 2002, Debtor filed a voluntary Chapter 7 bankruptcy petition. (D.I. 3, I. 14 at 2.) Creditor then filed a Complaint with the bankruptcy court alleging the debt owed by Debtor was non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A), (4) and (6). (D.I.3, I.1.) Creditor also filed a motion to dismiss Debtor's bankruptcy case under 11 U.S.C. § 707(a). (D.I.3, I.18.) At a hearing on March 31, 2003, both Creditor and Debtor testified before the bankruptcy court. (D.I. 3, Tr. at 145.)

On September 3, 2003, the bankruptcy court determined that the Monthly Checks, Specific Purpose Checks, and the $12,000 Check did not meet the standards required for an exception to discharge under sections 523(a)(2)(A), (4) and (6). (D.I.3, I.8.) The court further found Debtor's filing of her bankruptcy petition was made in good faith under section 707(a). (D.I.3, I.8.)

On September 17, 2003, Creditor filed this appeal. (D.I.1.) Subsequent to the filing of the appeal, both parties' counsel withdrew from the case. (D.I. 20; D.I. 21.) As a result, the parties now appear before me pro se.

## III. STANDARD OF REVIEW

On appeal, a clearly erroneous standard is applied to the bankruptcy court's findings of fact and a plenary standard is applied to that court's legal conclusions. *See American Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir.1999). When reviewing mixed questions of law and fact, I must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but [I must] exercise[ ] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 642 (3d Cir.1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 101–02 (3d Cir.1981)).

## IV. DISCUSSION

Creditor argues that, under 11 U.S.C. § 523(a), Debtor's debt is non-dischargeable because: (1) It was obtained under false pretenses, a false representation, and actual fraud; (2) It was incurred through larceny, and; (3) Debtor willfully and maliciously caused pecuniary harm to Creditor. (D.I. 2; D.I. 23.) Creditor further argues that Debtor's bankruptcy petition should be dismissed for bad faith filing under 11 U.S.C. § 707(a). (D.I.2.)

### A. Section 523(a)

Section 523(a) of the Bankruptcy Code "provides limited exceptions to the general dischargeability of debts of eligible claimants[.]" *In re Cohen,* 106 F.3d 52, 55

(3d Cir.1997), *aff'd,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). In total, there are sixteen types of debts that are not dischargeable under section 523(a). *Id.* A party objecting to discharge under any of these exceptions must establish the exception by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 281, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Here, Creditor argues that Debtor's debt to him is not dischargeable under sections 523(a)(2)(A), 523(a)(4), and 523(a)(6). (D.I.2.)

■ Section 523(a)(2)(A) requires that a "debt shall not be dischargeable in bankruptcy 'to the extent' it is 'for money ... obtained by ... false pretenses, a false representation, or actual fraud.'" *Archer v. Warner,* 538 U.S. 314, 316, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003); *see* 11 U.S.C. § 523(a)(2)(A). To prevail in seeking exception to a debtor's discharge of debt under section 523(a)(2)(A), a party must prove: (1) the debtor obtained money through representations which the debtor knew to be false; (2) the debtor possessed an intent to deceive; (3) the creditor justifiably relied on the false misrepresentation; and (4) the creditor sustained damages as a result of the false misrepresentations. *See, e.g., In re Casini,* 307 B.R. 800, 815 (Bankr.D.N.J.2004); *In re Redden,* 234 B.R. 49, 50 (Bankr. D.Del.1999) (citing *In re Haining,* 119 B.R. 460, 463 (Bankr.D.Del.1990)); *In re DeBaggis,* 247 B.R. 383, 389 (Bankr.D.N.J. 1999); *In re Cohen,* 191 B.R. 599, 604 (D.N.J.1996), *aff'd,* 106 F.3d 52 (3d Cir. 1997), *aff'd,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998); *see also Field v. Mans,* 516 U.S. 59, 68, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) ("[C]ourts that have previously construed this statute routinely require intent, reliance, and materiality before applying § 523(a)(2)(A).").

■ Section 523(a)(4) provides that an individual debtor will not be discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). A "'fiduciary or trust relationship is not required in order to find a debt nondischargeable by an act of ... larceny." *In re Hartman,* 254 B.R. 669, 674 (Bankr.E.D.Pa.2000) (quoting *In re Clayton,* 198 B.R. 878, 885 (Bankr.E.D.Pa. 1996)); *see Funventures in Travel, Inc. v. Dunn,* 39 B.R. 249, 251 (E.D.Pa.1984) ("The phrase 'while acting in a fiduciary capacity' does not modify the word[ ] ... larceny.'") Essential, however, to a finding of larceny is the showing of fraudulent intent. *In re Hartman,* 254 B.R. at 674. Therefore, to establish a claim of larceny, a party must show that: 1) the debtor misappropriated the subject funds for his or her own benefit; and 2) the debtor did so with fraudulent intent. *In re Hartman,* 254 B.R. at 674 (quoting *In re Clayton,* 198 B.R. at 885); *see In re Nichols,* No. 98–34520, 1999 WL 782111, at *7 (Bankr. E.D.Pa.1999) (quoting 4 Collier on Bankruptcy ¶ 523.10[2], at 523–76 (15th ed. Rev.1999)) ("[I]n larceny the felonious intent must have existed at the time of the taking."); *Black's Law Dictionary* (8th Ed.2004) (Larceny is "the unlawful taking and carrying away of someone else's personal property with the intent to deprive the possessor of it permanently.").

■ Section 523(a)(6) provides that a debtor will not be discharged "from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To have a debt excepted from discharge under section 523(a)(6), a party "must show that [the][d]ebtor acted deliberately and with the purpose of producing injury or with substantial certainty that her actions would produce injury." *In re Hart-*

*man,* 254 B.R. at 675 (citing *In re Conte,* 33 F.3d 303, 307 (3d Cir.1994)). Therefore, actual intent to cause injury is a required element to establish an exception under section 523(a)(6). *In re Nichols,* 1999 WL 782111, at *7; *see also Kawaauhau v. Geiger,* 523 U.S. 57, 63, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) ("[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6).").

■ It is apparent, from reviewing the exceptions to discharge under section 523(a) and the relevant case law, that to prevail under the three exceptions Creditor has cited he must establish by a preponderance of the evidence that Debtor had an intent to deceive and defraud, and an intent to cause injury. *See* 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(6); *In re Cohen,* 191 B.R. at 604, *aff'd,* 106 F.3d 52 (3d Cir.1997); *In re Hartman,* 254 B.R. at 674 (quoting *In re Clayton,* 198 B.R. at 885); *In re Nichols,* 1999 WL 782111, at *7. I find that Creditor, with respect to the Monthly Checks and the Specific Purpose Checks, has not met his burden of establishing the requisite intent required for sections 523(a)(2)(A), (4) and (6).

Essentially, Creditor's argument is that Debtor intentionally deceived and defrauded Creditor by making several misrepresentations to him to obtain money from him and by further misrepresenting that she had agreed to repay the money. (D.I. 23 at 5.) As support, Creditor points to several of the checks he gave to Debtor which denote on the "Memo" line the word "Loan." (*Id.*) However, it seems clear from the evidence that Debtor had only the understanding that the money given to her was a gift, for work she had done for Creditor, or a contribution to shared living expenses since the Creditor and Debtor shared a residence at various times during their romantic relationship. (D.I. 3, Tr. At 96–115.) Furthermore, it is evident that Creditor knew that Debtor was not capable of repaying him, given that she did not have a job for the majority of the time these payments were made and, with the exception of the $12,000 Check, Creditor was fully aware of the way in which Debtor was spending the money. (*Id.* at 62–63, 99–100.) Therefore, because the money apparently constituted gifts, compensation, or contributions, and because Debtor had not represented that she would repay the money, Creditor has failed to establish the required intent under sections 503(a)(2)(A), (4) and (6) to except from discharge the Monthly and Specific Purpose Checks.

■ With respect to the $12,000 Check, although Debtor admits that she made misrepresentations regarding the reason she asked Creditor for the check, I agree with the Bankruptcy Court that the $12,000 should not be excepted from discharge under sections 503(a)(2)(A), (4) and (6). First, under section 523(a)(2)(A), while Debtor may have intended to deceive Creditor by stating that her reason for asking for the $12,000 was to pay a debt that her mother had incurring on Debtor's credit card, Creditor has not established that he "justifiably relied" on Debtor's misrepresentations. (*Id.* at 82.); *See* 11 U.S.C. § 523(a)(2)(A); *In re Cohen,* 191 B.R. at 604, *aff'd,* 106 F.3d 52 (3d Cir. 1997). That is, Creditor has not demonstrated that he would not have given Debtor the check if he had known that it was not going to be used to pay the debt incurred by her mother. To the contrary, it is likely that Creditor would still have given Debtor the $12,000 regardless of her stated reason, given the fact that, after Creditor had given Debtor the $12,000, he gave her almost $50,000 over the next year and a half for many other purposes. (D.I. 26 at 3.)

Next, under section 523(a)(4), Debtor's false representation to Creditor regarding the $12,000 does not amount to the intent necessary to support a larceny claim. Debtor testified that her intent was to repay the $12,000 and Creditor admits that Debtor offered to pay the money back at $100 per month. (D.I. 3, Tr. at 76–77, 90–91.) Therefore, because it was not Debtor's intent to permanently deprive Creditor of the $12,000, a larceny exception under section 523(a)(4) is not warranted.

Similarly, Debtor's intentional misrepresentations to Creditor regarding the $12,000 does not substantiate "willful and malicious injury by [Debtor] to [Creditor]" as required under 523(a)(6). While Creditor has certainly suffered pecuniary harm as a result of the money he has given Debtor, Creditor has proffered no evidence to show that Debtor's intent was deliberate and with the sole purpose of causing injury to Creditor. *See In re Hartman*, 254 B.R. at 675 (citing *In re Conte*, 33 F.3d 303, 307 (3d Cir.1994)). Debtor was embarrassed to tell Creditor the real reason for wanting the $12,000 and was attempting to further her relationship with Creditor by using the money to assist her former husband to move out and to assist her in handling the increased living expenses she incurred because of that move. (D.I.3, Tr. 82–85.) Accordingly, the $12,000 Check is not excepted from discharge under 523(a)(6).

### B. Section 707(a)

Creditor argues that Debtor's bankruptcy petition was filed in bad faith and therefore should be dismissed under section 707(a). (D.I. 2.) Section 707(a) of the Bankruptcy Code "allows a bankruptcy court to dismiss a petition for cause if the petitioner fails to demonstrate his good faith in filing." *In re Tamecki*, 229 F.3d 205, 207 (3d Cir.2000). However, " '[d]is-missal based on lack of good faith ... should be confined carefully and is generally utilized only in those egregious cases that entail ... lavish lifestyles and intention to avoid a large single debt upon conduct akin to fraud.' " *Id.* (quoting *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991)).

While the Code does not define "good faith", several courts within this circuit have held that " '[a]t the very least, good faith requires a showing of honest intention.' " *Id.* (quoting *In re Marks*, 174 B.R. 37, 40 (E.D.Pa.1994)). Once the debtor's good faith is called into question, she has the burden to show her "honest intention" in filing for bankruptcy.

In this case, Debtor has adequately demonstrated her "honest intention" in filing for Chapter 7 relief. In reviewing Debtor's bankruptcy schedules, it is apparent from her list of assets and debts that she does not sustain a "lavish lifestyle." (D.I.3, I.9.) Further, although the majority of Debtor's debt is the money received from Creditor, Debtor testified that, given her then current income and debts owed to other creditors, she still would have been forced to file for bankruptcy even if she was not in debt to Creditor. (D.I. 3, Tr. at 109–114.) Therefore, Debtor's intent in filing for bankruptcy was not solely to avoid a possible debt owed to Creditor. Accordingly, Debtor's bankruptcy petition was filed in good faith.

## V. CONCLUSION

The bankruptcy court, in determining the merits of Creditor's Non–Dischargeability Complaint and Motion to Dismiss, applied the correct principles of law and its factual findings were not clearly erroneous. Therefore, for the reasons set forth herein, IT IS HEREBY ORDERED that the September 3, 2003 Order of the United

States Bankruptcy Court for the District of Delaware is AFFIRMED.