In re John Joseph BROWN, Laurel Anne Brown, Debtors

Oak Street Funding LLC, Plaintiff

v.

Laurel Anne Brown, Defendant.

Bankruptcy No. 08–11545.
Adversary No. 08–1126.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Dec. 12, 2008.

Alicia M. Chandler, Mark R. Wenzel, Krieg, Devault LLP, Indianapolis, IN, Howard B. Sandler, Howard B. Sandler, Beckman Lawson, LLP, Fort Wayne, IN, for Plaintiff.

Douglas R. Adelsperger, Sarah Mustard Heil, Skekloff, Adelsperger & Kleven, LLP, Fort Wayne, IN, for Defendant.

### DECISION AND ORDER ON MOTION TO DISMISS

ROBERT E. GRANT, Bankruptcy Judge.

By this adversary proceeding, the plaintiff has asked the court to declare that Laurel Brown's obligation to it is nondischargeable pursuant to § 523(a)(4) and § 523(a)(6) of the United States Bankruptcy Code. The debtor/defendant has responded by filing a motion to dismiss, ar-

guing that the complaint fails to state a claim upon which relief can be granted. *See,* Fed.R.Civ.P. Rule 12(b)(6).

The Supreme Court recently changed the standard governing a motion to dismiss. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007). In determining whether a complaint satisfies the requirements of Rule (8)(a) of the Federal Rules of Civil Procedure (the complaint shall contain "a short plain statement of the claim showing the pleader is entitled to relief"), it articulated a standard that is more rigorous than the one which previously held sway and which imposes two requirements. *See, Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929.

> First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests" ... Second, its allegations must plausibly suggest that the plaintiff has a right to relief raising the possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court. *E.E.O.C. v. Concentra Health Services, Inc.,* 496 F.3d 773, 776 (7th Cir.2007) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929)(internal citations omitted). *See also, In re Eisaman,* 387 B.R. 219, 222 (Bankr.N.D.Ind.2008); *In re Schmucker,* 376 B.R. 256, 258 (Bankr. N.D.Ind.2007).

It is this standard—one of plausible suggestion, rather than possible success under any set of facts—by which the complaint must be measured.[1]

■ Distilled to its essence, the complaint alleges that the debtor was the president of L.A. Brown Insurance Agency, Inc. The company borrowed $452,000 from the plaintiff and Ms. Brown guaranteed the loan. The loan was secured by a lien upon the agency's receivables—insurance commissions—which were to be deposited into an account controlled by the plaintiff. Some time after putting these arrangements into place, without the plaintiff's permission and in violation of the loan agreement, the debtor redirected the commissions so that they were deposited into an account other than the one controlled by the lender, thereby damaging the plaintiff in an amount yet to be determined. Count I of the complaint characterizes the debtor's actions as "fraud or defalcation in a fiduciary capacity, embezzlement or larceny," making the debt non-dischargeable pursuant to § 523(a)(4) of the United States Bankruptcy Code. 11 U.S.C. § 523(a)(4). Count II claims they constitute a "willful and malicious injury," so that the debt is non-dischargeable under § 523(a)(6). 11 U.S.C. § 523(a)(6). Whether or not the complaint's factual allegations adequately support these characterizations is the focus of this decision.

■ The "fiduciary capacity" required by § 523(a)(4) requires something more than a debtor-creditor relationship. *See, In re Hartman,* 254 B.R. 669, 672–73 (Bankr.E.D.Pa.2000); *In re Heath,* 114 B.R. 310, 311 (Bankr.N.D.Ga.1990); *In re*

---

1. The plaintiff ignores *Twombly* and defends the sufficiency of its complaint using the prior standard governing a motion to dismiss. Not only that, but it cites this court's decision *In re Eisaman,* 387 B.R. 219, 222 (Bankr. N.D.Ind.2008) for the formulation of that standard. Had counsel read *Eisaman* more carefully, it would have discovered that the decision specifically discussed how *Twombly* had changed the standard governing a motion to dismiss.

*Iaquinta,* 95 B.R. 576, 579 (Bankr.N.D.Ill. 1989); *In re Gans,* 75 B.R. 474, 489 (Bankr.S.D.N.Y.1987). Plaintiff tries to supply this something more by pointing to *Matter of Marchiando,* where the Seventh Circuit observed that the relationships which constitute a fiduciary capacity "involve a difference in knowledge or power between the fiduciary and the principal ... which gives the former a position of ascendancy over the latter." *Matter of Marchiando,* 13 F.3d 1111, 1116 (7th Cir. 1994). It then argues that because the debtor controlled the agency's day-to-day operations and had greater knowledge and power over its affairs, she occupied a position of ascendancy over the plaintiff; furthermore the account into which the commissions were to be deposited constituted a "res" which was entrusted to her care.

██ Plaintiff's reading of *Marchiando* twists that decision beyond all recognition. Unless the lender would take over a borrower's business, it is hard to imagine any lending arrangement where the borrower did not have greater knowledge and control over its own affairs than did the lender. If plaintiff's interpretation is correct, not only would the Seventh Circuit have come to a different conclusion than it actually did—no fiduciary relationship existed—but every lending relationship, particularly those involving secured lending, would qualify as a fiduciary one. The Supreme Court rejected that possibility generations ago noting:

> If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act. *Chapman v. Forsyth,* 43 U.S. (2 How) 202, 208, 11 L.Ed. 236 (1844).

It did so again, for similar reasons, almost a hundred year later. *See, Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333–34, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934). A borrower who is allowed to remain in possession or control of a creditor's collateral is not the lender's fiduciary. *Id.,* at 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398; *In re Whiters,* 337 B.R. 326, 331 (Bankr. N.D.Ind.2006). Without allegations sufficient to suggest a fiduciary relationship between the debtor and the plaintiff, no claim is stated under the first portion of § 523(a)(4) and whether the debtor's actions might constitute fraud or defalcation becomes irrelevant.

██ Plaintiff's contention that the debtor's actions constitute embezzlement or larceny is similarly deficient. Embezzlement and larceny both involve the misappropriation of someone else's property. The difference between them lies in whether or not the debtor's original possession of that property was wrongful. If so, we are dealing with larceny. If not, the charge is embezzlement. *See, In re Rose,* 934 F.2d 901, 903 (7th Cir.1991)(discussing larceny); *In re Weber,* 892 F.2d 534, 538 (7th Cir.1989)(discussing embezzlement); *In re Hofmann,* 144 B.R. 459, 464 (Bankr.D.N.D.1992). Nonetheless, we must be dealing with property that is owned by someone else. One cannot steal or embezzle one's own property. In the same fashion, a debtor that misappropri-

ates a creditor's collateral, and uses it for purposes other than repaying the creditors's loan, does not steal or embezzle that property. Their actions may be a breach of contract, or even conversion, but not embezzlement or larceny under § 523(a)(4). *See, Matter of Phillips,* 882 F.2d 302, 304–305 (8th Cir.1989); *In re Kjoller,* 395 B.R. 845, 851 (Bankr. W.D.N.Y.2008); *In re Barnes,* 369 B.R. 298, 305–306 (Bankr.W.D.Tex.2007); *Matter of Moller,* 2005 WL 1200916 *2 (Bankr. N.D.Iowa, 2005). Plaintiff's complaint contains no suggestion that it was the owner of the commissions the debtor allegedly diverted or that it had anything other than a security interest in them. As such, it fails to state a claim under the second portion of § 523(a)(4).

█ Count II of Plaintiff's complaint stands on a different footing. It is based upon § 523(a)(6) and claims that the debtor's actions vis-a-vis its collateral constitute a "willful and malicious injury." Historically, issues concerning dischargeability and the allegedly improper disposition of a creditor's collateral are litigated under this portion of the Bankruptcy Code. *In re Russell,* 262 B.R. 449 (Bankr. N.D.Ind.2001); *In re Heath,* 114 B.R. 310, 311 (Bankr.N.D.Ga.1990). While not every misuse of collateral will suffice, *see, Davis v. Aetna,* 293 U.S. 328, 332, 55 S.Ct. at 153, 79 L.Ed. 393, the debtor's

breach of obligations contained in a security agreement may be sufficient to make the resulting debt non-dischargeable if the breach is *both* willful and malicious.[2] *Phillips,* 882 F.2d at 302; *Russell,* 262 B.R. at 455. The allegations related to Count II of the complaint are sufficient to plausibly suggest that the debtor's actions in redirecting the deposit of commissions due her insurance agency, and which secured the plaintiff's claim, constituted a willful and malicious injury within § 523(a)(6)'s meaning of those terms.

IT IS THEREFORE ORDERED that:

1. Count I of plaintiff's complaint fails to state a claim upon which relief can be granted and is hereby DISMISSED.

2. The motion to dismiss Count II of plaintiff's complaint is DENIED and the defendant shall answer the allegations relating to that claim within ten (10) days of this date.

---

**2.** If the debtor's actions are willful and malicious, the size of the non-dischargeable debt is determined by the value of the converted collateral, not the total amount due the creditor.